OPINION OF THE COURT

Per Curiam.

Subdivisions 1 and 2 of section 2-a of the General City Law are not unconstitutional in consequence of the provisions of section 3 of article XIII of the New York State Constitution. Accordingly, no vacancy in the offices of Mayor or President of the Common Council of the City of Albany requiring election before the fall of 1985 will exist by reason of the death of former Mayor Erastus Corning, 2nd.
Petitioner City Clerk of the City of Albany instituted this proceeding in the nature of mandamus to compel respondents, constituting the Albany County Board of Elections, (1) to accept his certificate that the offices of Mayor and President of the Common Council of the city are to be voted for at the general election to be conducted on November 8, 1983, and (2) to cause such election for those offices to be held. The demand is predicated on the city clerk’s claim that section 2-a of the General City Law, by which the duties of those offices devolved on the then President and President Pro Tempore of the Common Council, respectively, and they became Mayor and President of the Common Council, at the death of former Mayor Erastus Corning, 2nd, on May 28, 1983, is violative of the State Constitution insofar as it results in the present incumbents remaining in those offices beyond December 31,1983.[1] As alternative relief, the city clerk asked, in the event that it should be determined that the mandamus proceeding does not lie, that it be converted to a declaratory judgment action and that judgment be granted declaring that the statute is void as unconstitutional.
*42 Special Term, treating the litigation as an action for a declaratory judgment but otherwise denying the relief requested, declared that section 2-a of the General City Law is constitutional and applicable to the offices in question and that there are no vacancies in such offices requiring an election prior to the fall of 1985. A direct appeal from that judgment has been taken to this court by petitioner pursuant to CPLR 5601 (subd [b], par 2).
Critical to our decision is a careful reading of the statute and the constitutional provision that we are called on to consider. Section 2-a of the General City Law, titled “Succession to certain city offices”, insofar as relevant states:
“1. In every city in which the mayor and president or presiding officer of the local legislative body are elected at the same time and for the same term by the electors of the entire city, in case of the removal from office of the mayor, his death, inability to discharge the powers and duties of the office, resignation or absence from the city, the powers and duties of the office shall devolve upon such president or presiding officer for the residue of the term or until the disability shall cease. When the powers and duties of the office of mayor shall devolve upon such president or presiding officer for the residue of the term, he shall serve as and be the mayor.
“2. In every such city, in case of the removal from office of the president or presiding officer, his death, inability to discharge the powers and duties of the office, resignation, absence from the city or when he shall serve as and be the mayor as provided in subdivision one, the powers and duties of the office shall devolve upon the president pro tempore or vice-chairman for the residue of the term or until the disability shall cease. When the powers and duties of the office of president or presiding officer shall devolve upon such president pro tempore or vice-chairman for the residue of the term, he shall serve as and be the president or presiding officer. The provisions of this subdivision shall apply to cities in which the president or presiding officer of the local legislative body is elected at the same time and for the same term as the member selected *43 by such body to be its president pro tempore or vice-chairman.”
Section 3 of article XIII of the Constitution, relating to “Vacancies in office”, provides: “The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy”.
As an examination of these provisions discloses, the constitutional proscription in section 3 of article XIII has no relation to the statutory prescriptions of subdivisions 1 and 2 of section 2-a of the General City Law. The former addresses the filling of vacancies in public office; the latter, the automatic and instantaneous devolution of powers and duties of certain specified public offices to the end that there shall be no vacancies in those offices. The design of the statute is calculated to obviate a void and thus the possibility of any paralysis of municipal executive authority, however brief, which would attend the necessity for independent action to accomplish replacement.[2] The Legislature has understandably deemed the importance of the uninterrupted availability of executive authority so urgent as to eliminate the potential risks and exposure of even a temporary hiatus in the office of Mayor or President of the Common Council.[3]
Even if the words “filling vacancies in office” as found in the constitutional provision were to be interpreted as referring generally to succession in public office, the proscription of the Constitution would not be applicable to the provisions of the statute. The former relates only to “appointment”, a method of selection quite distinct from “elec *44 tion”. The differentiation between appointment and election of public officers is evident and of very great political and practical significance. The constitutional provision imposes a restriction on the term of office only of persons appointed to office. By contrast the statutory provisions address the powers and duties of elective offices.
Additionally, it is significant to recognize that the concept embodied in the statute is markedly different from that of the constitutional provision. The Constitution contemplates the discretionary choice of a person; the statute, the devolution or transfer of powers and duties to the present holder of a particular office. The person in whom the powers and duties vest pursuant to the mandate of the statute has already been identified — and by the process of election. Indeed when the voters chose the President of the Common Council in November, 1981, the choice was of one to succeed to the office of Mayor of the City of Albany in the event of the death of the then elected Mayor. Thus, the designation of the successor was mandatorily ex officio, wholly free from exposure to the practical and human risks which inevitably attend any exercise of a power of appointment or to the possible frustration of the wishes of the electorate. The successor Mayor exercises the authority and responsibilities of his office with the imprimatur of the electorate, a political base recognizably different in kind as well as dimension from that of an appointed official.
In consequence then of the dictates of the express language of section 3 of article XIII of the Constitution and of section 2-a of the General City Law, as well as in furtherance of the governmental polity undergirding both provisions, it must be concluded that nothing by way either of explicit provision or surrounding principle warrants the conclusion that subdivisions 1 and 2 of section 2-a are unconstitutional.
Accordingly, the judgment of Supreme Court declaring that subdivisions 1 and 2 of section 2-a of the General City Law are constitutional and that no vacancy in the offices of Mayor or President of the Common Council of the City of Albany requiring election before the fall of 1985 will exist in consequence of the death of Mayor Corning, should be affirmed, without costs.
*45 Judges Jasen, Jones, Wachtler, Meyer and Simons concur in Per Curiam opinion; Chief Judge Cooke taking no part.
Judgment affirmed, without costs.

. The terms to which Mayor Corning and the President of the Common Council were elected in November, 1981 will continue through December 31, 1985. The President Pro Tempore was selected by the council in January, 1982 and had been elected to the council for a term expiring December 31, 1985.

. We are not unaware of section 1 of article XIII of our State Constitution providing for the swearing in of public officers. Compliance with this provision, however, lies within the immediate reach of a Mayor or a President of a Common Council who succeeds to office by virtue of section 2-a.

. In this perspective we note that the authority for the Legislature’s enactment of subdivisions 1 and 2 of section 2-a of the statute does not stem from any delegation under section 3 of article XIII of the Constitution but rather derives from the constitutional grant of legislative power in section 1 of article III, the source of its authority for the enactment of the General City Law.